18-4090. Counsel? May it please the court, my name is Kathleen Lord and I represent Luis Gomez-Castro. The court called for oral argument in this matter and I plan at the outset to focus on the instructional errors raised in argument one, but I've done my best to prepare for any questions that the court might have. There were basically only a couple of disputed elements in this case and it was conceded by the prosecution or the government in the case below and that was whether Mr. Gomez had prior knowledge that there was methamphetamine in his apartment and whether he had possession with the intent to distribute the methamphetamine. There are three substantial instructional errors in this case, none of which are perfectly preserved. Two involve the elements of the offense, in other words, aid or embed or liability, which the government has conceded was an erroneous instruction vis-a-vis the intent element. And the constructive possession instruction, which likewise had deficient elemental instruction on the intent element. The third instructional error is more of a process error and that was the court instructing the jurors repeatedly that they could discuss the case before they formally deliberated and they could discuss it with each other so long as they were all together and with the alternate jurors. There's no concession of error there though, right? Correct, correct. Did the defendant object to the aiding and abetting or the possession instruction? No, he did not. And under Jarob, which was decided a year ago out of Utah, where the defendant did not object, that was considered to be invited error? You know, I am not familiar with that case and I would like an opportunity to read it and respond. I think you have to look at the facts of each case to decide whether an issue is invited or not. I think this is typical, unpreserved error subject to plain error review. And the government has never argued that this claim was anything other than subject to typical plain error review. Well, Ms. Lord, would this case be distinguishable from Jarod? Because the tendered instruction from the government was in two parts. And the problem was the second part was just disappeared and nobody caught it. Would that suggest that that is just an error rather than an invited error? Well, I think definitely with respect to the aiding and abetting instruction, I think both sides thought that the instruction that the court was going to give on aiding and abetting liability would contain both parts of the tendered instruction by the government. And the second part, which contained the critical element aspect, disappeared. And no one caught it. Not the court, not the government, and not... I don't know what the local practice is or this specific judge's practice, but does the record indicate whether or not the jury was given written instructions in addition to them being delivered by the court? I'm not sure that it would matter, but I do think... What does the record indicate one way or the other? I think that the record indicates that the jurors were given written instructions because I distinctly remember that they all had written instructions for the pre-deliberation instructions. So the court gave out its pre-deliberation instructions, its introductory instructions, and all of the jurors had those. And I just don't have a distinct memory of whether the final instructions went to the jury, but I believe they did. So we have a situation where two intent elements are missing from the instructions. No finding by the jury compensated for that. There will be some cases where, for example, constructive possession is not properly defined, the intent element, but the jury will find, properly find, a crime that compensates for that deficiency in the elemental instruction. And why doesn't Simpson do that in this case? It doesn't because of the other elemental defect. Because, for example, the court, I mean the court, the jury found possession with intent to distribute, but they were also instructed on aider and abetter liability, and that allowed them to find that offense without finding that Mr. Gomez had the actual intent required because they could have found the intent by a principal and found that Mr. Gomez aided the principal, but without the specific intent required by Rosamond and Rosales. You used the word, I think, in your brief, taint. Are you essentially suggesting something along the lines of, not the exact rubric, but something along the lines of cumulative error in the sense that, yes, you had this error as it relates to the intent to possess, the constructive possession one, and you combine that with the fact that you had an error as it relates to aiding and abetting, and essentially the aggregation of that results in there being harm here that might not otherwise be harm in Simpson? I'm definitely and expressly arguing in the opening brief that the aggregate effect of error could target the court. I believe each error could qualify as reversible plain error, but if there's any hesitation on the part of the court to find that, the court needs to aggregate the impact on Mr. Gomez's substantial rights and whether given this, I mean, three very substantial errors, and in the light of all the facts in this case, and especially since Mr. Gomez testified, and these errors not only reduced the government's burden of proof on critical elements, it also denied him the defense that was supported by his own testimony. And it's really critical for the jury to evaluate his credibility and whether he really should be acquitted because what he's testifying to  Looking at Waldron, however, well, not Waldron, but looking at your instruction related to the process, the deliberation one, you allude to the fact that there may have been a risk associated with that instruction, that there was some, the jurors might, what was it, the language was that they in some sense might have had a premature assessment of the evidence. Well, all you've got is a risk. That's speculative. I mean, you've got to show that there was prejudice. We don't even know, do we, that they actually deliberate. Well, this is a very unique situation. And what we do know is that there's a longstanding requirement that jurors actually be instructed to the contrary, that they should not discuss the evidence before they get to the end of the case. The government has an accepted error here and conceded that. So what we're talking about is prejudice. And what I'm asking you is what evidence do you have that there was any harm, because the court didn't direct them to deliberate early. It just said you can't. Right. And it repeatedly said that. And it also, you know, in terms of burdens in this case and establishing prejudice, I think we can presume that having repeatedly been told that they could discuss the case with each other and with the alternate. And repeatedly told that they shouldn't make up their mind until it's time to deliberate either, right? That's correct. And that's why I cited the court to Weinbrenner, which is the seminal case in this area that recognizes human nature, that when you start expressing a view about the quality of the evidence, and recall that the alternate juror is part of this, too. And I understand what the court's saying. We don't have evidence that for sure the jurors and the alternate discussed this case beforehand. But I think it would be unfair to put that burden on the defense in this context, because the judge, for example, in his concluding remarks, really discouraged the jurors from ever discussing this case. And I think if you go to the very last instruction that the judge gave, he says, you know, you don't have to talk to anybody, and if you do, if you discuss what other people said to you, and I'm paraphrasing, that could challenge the very integrity of the jury system. So in light of that, and in light of the case law that does exist, because, you know, this case is really, the pre-deliberation instruction is very different than the cases I think relied on by the government. Those are cases where the court fails to admonish. This is a case where the court repeatedly admonished. That's quite true, but we, in a number of contexts, rely upon the presumption that the jury follows their instructions. And coupled always, I think, with the instruction that you can deliberate among yourselves, was the instruction not to make up your mind and not to do the exact thing that you said that there would be a risk that they would do, right? Well, the jurors could be honestly adhering to that instruction and not, in their minds, reaching a final result. And yet, as the cases I've cited in the briefs recognize, just by talking about the evidence, expressing the view on the evidence, without reaching the ultimate conclusion, that can, psychologically speaking, you know, have an impact. Well, fair or not, you're under plain error, and plain error puts the burden of that on you, right? It does, except in, I think, the rarest of circumstances, and this might be one of the rarest of circumstances, only because it's almost impossible for us, two years after the fact, and with the jury instructed the way it was, to establish prejudice. And what I'm relying on is the likelihood that, given the repeated instructions, that did happen. Now, aside from that, I'd also ask the court to look at that instruction in light of the other instructional error. Let me, I know you wanted to talk about the instructions, but I really feel I have to address an issue related to your obstruction of justice contention. And really, that, if I understood it correctly, there are two things that you're alleging. One is that the court's findings were legally inadequate. Under Massey and under Dunnigan, they were legally inadequate. Two, that there was factually not a sufficient basis for the obstruction of justice enhancement. Well, I would just clarify the second part. My point is the court's findings point out four different aspects. And those four different aspects are insufficient to support an obstruction of justice enhancement, for the reasons I say in the brief. Well, if, okay, their findings were, the court's findings were insufficient to support it. Okay, well, that's a factual issue as opposed to the legal, whether the court did what it should do in terms of making adequate findings. Is that right? Those are two different things, right? Those are two different things. Okay, well, as it relates to the first one, which is a legal argument, I'm having a hard time seeing where you preserved that. Because the reality is when you looked in your brief to where you alleged preservation, it was your sentencing memo, and all your sentencing memo said was that the facts were not adequate to support this obstruction of justice enhancement. That was before the court even opened its mouth. That was before the hearing actually took place. And so your first allegation is an articulation error. The court did not give adequate findings. Well, you weren't situated to know that until the court actually made the findings, and then you didn't object after that. We didn't object after that. We presented evidence that went to whether there was an obstruction of justice. The case law is very apparent that the court has to make express findings and identify the language that is perjurious. That doesn't answer the question, because what I asked you initially is whether there were two allegations of error. You said yes. Factual one, we can deal with that. Second one is whether the findings were adequate. That happens when the court articulates. You said nothing after the court articulated. It seems to me whether the government raises that issue or not, which is its problem, you didn't do that. You did not object. And I see my time's running out. I will try to come up with a succinct response, and I think the court has identified one of the issues, and that has never been raised before as a response to our obstruction of justice argument. But thank you. Good morning, and may it please the Court. Jennifer Williams for the United States. Mr. Gomez has alleged a number of errors, and I'm happy to address whichever ones the court is interested in. Why don't you start by telling us why you didn't claim that there was any lack of preservation on the legal issue associated with obstruction of justice. It is true. We did not claim that in our brief. In preparing for argument, I did find some cases unpublished where the court did make the finding that that particular argument was unpreserved, where the defendant did not object after the district court made its obstruction finding. Do you think the court's wrong? I mean, do you think what I'm saying is wrong? No, no, we don't. But I acknowledge we didn't raise that argument in our brief. But I have found cases where, again, I think mostly in unpublished cases, this court has held that exact thing, that the defendant has to object in the district court after the district court makes its obstruction findings. So we believe that you are correct. Okay, let me ask you a question. No decision made here, of course, yet. But let's assume for the moment that what we're focused on is what prejudice occurred here. I mean, well, on the question of obstruction of justice, if we're focused on whether there was sufficient evidence of obstruction of justice, a scratch to prejudice thing, if we're focused on whether there's sufficient evidence of obstruction of justice, are we limited, if we can discern that the court actually identified the perjurious statement, i.e., I think that's Massey, if the court did that, are we limited to what the court said there, or can we look at the record as a whole? I think part of this played out in the supplemental authority. I mean, can we look at the trial transcript in discerning whether, in fact, there was perjury? Yes, and my understanding of the supplemental letter filed by Mr. Gomez was that their claim was that if the court remands the case, there shouldn't be new evidence submitted, not that the court can't look at the record. And so our answer is yes. No, but I understood Mr. Gomez to be saying that there were four things the court said in that hearing, and those four things are the scope of what would determine whether the factual basis was sufficient for the enhancement. And what I'm asking is, is that in fact the case? I mean, if we know what the perjury statement is, can we look in the record itself to discern whether there was perjury there? Yes, and that's what this court has said, that the review is for clear error, and as always, the court looks at the record. The court can affirm on any basis. The question is whether the district court clearly erred in its factual finding that he deliberately lied, and in making that determination, the court has the entire record before it. I would also point out that the district court's statements at sentencing have to be viewed in the context of the entire sentencing proceeding, and what happened was there was a PSR that recommended the obstruction enhancement on a number of grounds, both the inconsistencies between Mr. Gomez's testimony and the testimony of the Ogden police officer, Don Johnson, but also based on the inconsistencies between Mr. Gomez's testimony about what happened on the day of the drug deal, September 12th, and the testimony of the police officers as to what happened that day. So his claim that he didn't know the drugs were in his apartment, which was contradicted by the testimony of the officers. That was all in the pre-sentence report. In response, Mr. Gomez objected and presented the testimony of Don Johnson, which was heard at the sentencing hearing. And while the district court in its actual articulation listed those four identified discrepancies between Mr. Gomez's testimony and the testimony of Don Johnson, it was in the context of all of these other factual statements that were in the PSR. Well, hold it. On the PSR, which I'm looking at, and I'm looking at paragraph 23, which is for obstruction of justice, which runs five lines, and I don't see all of this talk about other obstructive testimony, perjury, so forth, and then I see the objection and the government's, the probation office's response, which says, in the most scant terms possible, that recognizing the objection on Don Johnson, they say, here it is, the enhancement for obstruction of justice may still be appropriate for other aspects of the defendant's testimony at trial. I have the pre-sentence report over here. I believe it's paragraph 14 where... ...is paragraph 23, and it doesn't identify all of these other things. Well, but paragraph 16 discusses the adjustment for obstruction of justice. And it says, Mr. Gomez's testimony at trial was not truthful in regard to how the controlled substances entered his residence and his testimony that he was working undercover for an Ogden detective. See paragraph 14. And then paragraph 14 discusses all the testimony at trial about his claim that he didn't know the drugs were in his apartment and how that was inconsistent with the testimony of the police officers. Well, I don't think that the government in its response has ever identified these. And there are a host of things, I understand. His testimony is a minefield of potential obstructive 3C1.1 statements, testimony. But I don't see in the government's filings where those were brought up. In other words, it looks to me like the district court was left in the lurch a little bit and went with Don Johnson off the cuff. And so why shouldn't he be stuck with Don Johnson? Well, I have a couple of responses to that. I mean, I think the government's motion for the enhancement, while admittedly sparse, at least references the discrepancies at trial. And again, the district court had before it the pre-sentence report, which does in that paragraph specifically address those discrepancies. And this court has stated that the district court can also impliedly find the various factors, that it doesn't all have to be explicitly on the record. True, but that's an articulation issue, and that's an issue of whether you have to be expressed in your findings. But if the district court's findings related to Don Johnson, and this is something I want to try to get clearer in your view on, it seems to me once under Massey you have identified this is the perjury. Now, as I understand it from what you were saying, we can look in the record to see if there's support for this is the perjury. But that's different than saying, well, then now we can look and see if there's other perjury, too. And therefore, the court would have been fined in finding perjury because there's all this other perjury out there. Those are two different things. And if we can look out in the record and say, oh, there's all this other perjury, that defeats the point of having the Massey requirement of forcing you to identify that's the perjury, right? Well, I think the perjury in this case is his testimony. It's his defense. It's his testimony that he wasn't an active participant in this drug deal. He was simply gathering information for the Ogden police. That is the perjury. Okay, so we could not support this enhancement by his statements about not knowing that the box in his apartment was methamphetamine. No, you could because that is part of his defense. Part of his defense, I wasn't an active participant in the drug deal. I didn't know the drugs were in my apartment. I was simply gathering information, and then when I saw the police coming to my apartment, I suddenly remembered the box and I dumped the contents in the toilet. That's all part and parcel of the perjurious testimony, the perjurious statement, which is, in this case, his entire defense that he was not an active participant in the drug deal, that he was simply gathering information for the Ogden police department. Now, the evidence that the district court, the findings the district court makes explicitly in the sentencing hearing have to do with the discrepancies between his testimony and Don Johnson's testimony, but the testimony about the events the day of the drug deal are also support for the perjurious, the finding that the perjurious testimony is his statement, his statement, his defense, that he was only gathering information for the Ogden police department. But there are multiple discrete potential lies there, and so I'm struggling with that because it's one thing if the standard was, all we have to determine is, did he commit perjury? That may be pretty easy looking at the record, but that's not what the question is. So I'm trying to understand, why isn't the question, however, did he commit perjury relative to the John Johnson episode that he was cooperating, and his testimony, he lied about working in 2015, essentially. And that's discrete from whether he knew the box. I mean, yes, I take your point that it's part and parcel of this whole big thing, but on the other hand, aren't we supposed to, in the whole point of the Massey requirement, that we say, that's the lie. Where's the proof that supports that? Isn't that the whole point of the exercise? Well, it is, and I think in some cases the lie is more discrete. Here, the lie was a bigger lie. It was his defense. It was his claim, and it was a big claim, and it encompassed a lot of different specific factual findings, but it was the claim that he had been an informant and he was still, although he was no longer an informant, he was still gathering information. But doesn't that get us exactly at this issue of the harm that can occur, which the Supreme Court was trying to get, or we were trying to get at in particular in Massey, the idea that when you get on the stand and say, I didn't do it, you shouldn't immediately be subject to an obstruction enhancement. The court should have to identify, that's it, that particular lie, not the I didn't do it and whatever weave, you know, that you do to say I didn't do it, which he had a weave here, but you have to tease out what the specific thing is. Because your statement that it was his defense seems to me encapsulates the same idea that as soon as you hit the stand and say I didn't do it, if you in fact did do it, perjury. Well, I think it depends what your testimony is in your defense and whether you take the stand and whether you deliberately tell lies. And in this case, based on the facts of this case, he didn't just say I didn't do it. He said specifically I was only gathering information for the Ogden Police Department. I was not an active participant. Excuse me? That's what the court identified, this business about him gathering information for the Ogden Police Department. Yes. Okay, all I'm saying is if that's the case, should we be then limited to determining whether there was a factual basis for that as opposed to saying, oh, we can also look at his statement about the box and he didn't know it was methamphetamine in the box. I mean, yes, in the scheme of things, that's all part of his view that I didn't do it and I didn't know it, but that's a discreet lie, isn't it, from I was gathering information to work off the charges for my girlfriend? Well, we don't believe it is. We believe that it was part of the same lie. What is the problem? Why is it so burdensome to say to the government if you want this enhancement, it's your burden to prove it, and so if you're going to go in and rely on perjury, give the district court a bunch of examples and it would be nice if there's even a record site saying on this page he said that he did not, that whatever the events were as the two cars came back to the apartment, that the C.I. did not go into the apartment. That was a lie, Your Honor, because we have the officer who is surveilling and he saw that didn't happen. Wonderful. Then we're not having all of this discussion. In other words, why should we reward or maybe that's the wrong word, but why should we permit the government to do kind of a sloppy job on the obstruction enhancement here, not furnish all of the details to the district court, and then when we say this isn't very good on Don Johnson to then say, well, but there's all this other stuff too. In other words, isn't the problem the government just didn't identify it well enough at the district court? Well, again, we admit that the government's motion for the obstruction enhancement was sparse, but it was supported by the PSR, which did identify all of these discrepancies. You say all of these discrepancies. We're talking little teeny paragraphs in that PSR. We're not talking about citations to the record. We're not talking about what his testimony was exactly. Well, paragraph 14 is a fairly extensive paragraph, which doesn't cite to the record, but it does specifically lay out the identified discrepancies between his testimony about what happened on the day of the drug deal and the testimony of the officers. The other point is that the testimony of Don Johnson was only presented at the sentencing hearing, and so the government, that was, they objected, Mr. Gomez objected to the sentence enhancement in a written filing and then presented the testimony of Don Johnson at the sentencing hearing. And so that was additional evidence to which the government could not respond until the actual sentencing hearing. Ms. Williams, your time is up. However, there's an issue I want to discuss with you that we haven't discussed at all, and that is the aiding and abetting instruction. Yes. As I understand it, the record will essentially establish that the second page or the second part of the proposed instruction from the government just fell out of this, and that's the problem, correct? That's, as far as we can tell, that's what happened. And by all this discussion you've been making about all the lies this gentleman told in his case in defense, the essence of his case was he was denying intent to distribute, correct? That was the essence of his case. He was not intending to distribute. He was trying to help his girlfriend. Yes. Although I would just point out that the intent to distribute is part of the constructive possession, and there has been no claim that. I want to focus just now on the aiding and abetting, all right, before we ever get to the constructive possession. The essence was that he had no intent at all in this case other than to help his girlfriend. Yes, that was his claim. That was the essence. So if you give an instruction on aiding and abetting that excludes intent, you've effectively denied him of his entire defense, haven't you? No, because of the standard of review, which is plain error, because he did not object, and because the question is whether evidence of the missing element was offered at trial. Well, wait a minute. As I understand it, your approach on plain error is you say that it was error and it was plain, but that it did not affect his substantial rights. That's the essence of your position, correct? It is, yes. All right. And you don't go on to the fourth aspect from the Alano case about the integrity of the court and that last element, right? You don't even go into that. No, well, because our argument about the lack of prejudice also goes to that. Well, but you focus on the third element of plain error. Yes, we do. All right. And so we haven't even talked about Alano in this. You didn't talk about Alano. And that is the effect upon the fairness, integrity, or the public reputation of the proceedings, correct? Yes, correct. We don't specifically address that. Our position would be that. I understand your position, but it's not in your brief. How can it be that his substantial rights are not affected if there's a jury instruction that does not require intent? Because the court's case law is that there is no prejudice if strong evidence of the intent element is offered at trial. So the question is whether the result would be different. In this case . . . But you have to look at it from another standpoint, too. Yes, the evidence may have been strong, but his whole case and defense was to say, I didn't intend this. I intended to help my girlfriend. So that jury instruction essentially denied him of that defense, didn't it?  I don't want to hear the point. Why did that jury instruction, without the requirement of intent, why did that not deny him of the essence of his defense? Because he has to show prejudice. And under this court's case law, he can't show prejudice. Well, doesn't our case law say that you're entitled to your theory of defense? And there was strong evidence at trial. No, I'm talking about his case. I understand, but there was strong evidence at trial that he did have the requisite intent. And was the entire theory of prosecution that he was an aider and abetter? I thought part of the theory was he's the principal. Well, that was the other point I was going to make. Although these alternate instructions were given, the government never relied upon either an aiding and abetting theory or a constructive possession theory. It relied on actual possession and that he was the principal. But when you submit it to the jury, we don't know what the jury did. And it could well have been that they listened to him in saying, well, maybe his defense on intent will get him over the direct charge. But when we go to aiding and abetting, well, we can find him guilty of aiding and abetting. We don't know what they did, right? That's true. We don't. But again, I go back to it's plain error and it's his burden to show prejudice. And given all the evidence at trial of his intent and the fact that the evidence the government put on at trial was that he was the principal and that he did not aid and abet or constructively possess, that he hasn't met his burden of showing prejudice. That means that you are saying that when the government has a strong case, we can exclude the defendant from testifying on his intent. No, that's not. That's the effect of this instruction. That's not what I'm saying at all. What I'm saying is in the context of this case, where there was an admittedly erroneous instruction that admitted the intent element under this court's case law where the standard of review is plain error and his burden is to show that he was prejudiced, what the case law says is that there is no prejudice if strong evidence of the intent element was offered at trial. Are you relying upon Johnson? I believe so. We cited the case in our brief. I would agree, wouldn't you, that Johnson is not a substantial, affecting the substantial rights case. Instead, it is a case that relates to the fairness, integrity, or public reputation of judicial proceedings, essentially what some people call the fourth element from Milano. Wouldn't you agree that's what Johnson is about? I'd have to go back and look at it. It says in Johnson, but we need not decide the question, that is of substantial rights, because even assuming that the failure to submit materiality to the jury affected substantial rights, it does not meet the final requirement of Milano. Now, doesn't that indicate that Johnson was about Milano and the fourth element? It sounds like it is. I don't have other cases at my fingertips. And in Johnson, it didn't say only that you have strong evidence or you have overwhelming evidence. Didn't Johnson also say that the evidence must be overwhelming and essentially uncontroverted? It says that. Okay. Okay. It was controverted in this case, wasn't it? It was controverted by his whole defense. But under the prejudice? Well, I'm just looking at Johnson, and you say that's, I think you're wrong, used as a substantial rights case. But even Johnson says that the evidence must be overwhelming and essentially uncontroverted. Now, you would agree that the evidence was controverted by his testimony, correct? Yes, we would. All right. So it was essentially controverted? It was. But the question for the court still is under a prejudice analysis. And Johnson says? A reasonable probability that the result would have been different. And so the court has to look at the specific testimony in this case, not just that it was controverted, but how it was controverted. How can you say that a different result could not have resulted when effectively the aiding and abetting instruction denied him his own testimony? Because there's no requirement of intent for them to find him guilty under aiding and abetting, which we have to assume could well have happened. Well, the standard is a reasonable probability. And, again, I think what's important are the specific facts of this case. His testimony compared with the testimony of the two police officers and Agent Kennedy, and putting aside the testimony of Lieutenant Subay but the testimony of the Salt Lake police officer, that he was the one who had arrested the girlfriend. But you don't balance. Because of the instruction on aiding and abetting, which could have been the basis of the jury decision, because there's no requirement of intent there, we don't even consider what he said because the prosecution didn't have to show intent on aiding and abetting. So it doesn't matter. Of course the evidence is going to be overwhelming. The question for the court is whether the government did prove intent, whether there was a reasonable probability that the result would have been different. And the court answers that question by looking at the evidence that was submitted at trial. Did the government have to prove intent of the principal charge, the charge he was accused of? In other words, he was accused of being possession with intent to distribute, right? Yes, and as I believe I said earlier, there was a challenge to the possession aspect of that charge but not to the intent to distribute. And the jury did convict him of possession with intent to distribute. And it could have been because they deemed him an aider and abetter. We don't know, right? But I think the standard of review in this case is important. We agree with this. We do not know whether the jury found him guilty as the principal or as an aider and abetter. We don't know, do we? I have to go back to the standard of review. Is there a reasonable probability? I ask one question. Is it true that we do not know whether the jury convicted him as a principal or an aider and abetter? Your Honor, I don't believe I can answer that without going to the standard of review. Wait a minute. Do you know how the jury decided this? Do you know that they decided that he was a principal? No, we don't know that. Okay, then you've answered my question. Then that means that the possibility is that they convicted him as an aider and abetter without the requirement of intent. But I would dispute the word possibility. The standard is a reasonable probability. And I have to go back to, one, although this jury instruction was included, the government never argued it as the theory of liability. They relied on his position as the principal. They don't have to argue it. They put it in the written instructions. It's there. You cannot run away from this. They said, alternatively, you can convict him as an aider and abetter and you need not show intent. But because Mr. Gomez has to show prejudice, that's not really the inquiry. The inquiry is whether it's likely that they convicted him as an aider and abetter. If the court has no further questions. No. Thank you. Thank you, counsel. Whether you want it or not, Ms. Lohr, 12 minutes. We're going to be fair here. Go ahead. I'm sorry. You don't have to take it. You know, I think it's important to answer the court's questions. So I'll, you know, I only have 58 seconds and that's what I'm counting on. But if the court has any questions. Okay. So getting back to the obstruction of justice, the government says the question is, did the court err in its factual determination that the defendant deliberately or willfully perjured himself? And the court never made that finding at all. And I think in this case, aside from everything we've discussed before, there's a real issue, one, about whether Mr. Gomez was testifying truthfully, at least in his own mind. The fact that the government believes he was not testifying truthfully and the fact that they brought up the fact, I mean, their allegations were, he's untruthful, look at our case. And as the court, I think, recognizes, that's not sufficient. Cannot inconsistencies, and I believe we have cases that say this, inconsistencies can provide a reasonable inference that there was knowing falsehood. Absolutely, but that's not. There was an inconsistency as the court found it in its brief statement that he said I was cooperating in 2015 and there was no evidence that he was cooperating in 2015. But that's not what the trial court found. The trial court found specific facts. And as I indicated in the brief, at least three of those were wholly consistent with the defendant's testimony. And the only one that wasn't was a non-discerning Adam. Well, the Adam, well, the point was, his whole theory and the point in question was at the time of this crime, 2015, he was cooperating with law enforcement. In specific, maybe he didn't know the name of the person, but he's saying I'm cooperating with law enforcement. The court said no, there's no evidence that he was cooperating with law enforcement in 2015. And the point is, give me a case that tells me we're limited to the exact words the court uses in making its findings. We can infer from what the court said what it was trying to get at. And implicitly, the court says, you said you worked for law enforcement in 2015. You didn't. Lie. Respectfully, that's not what the trial court said. The trial court, as is required by this court's precedent and by Supreme Court precedent, identified specific statements. Presumably, those were statements that the court found or those were facts. But the court doesn't even identify any actual statements by Mr. Gomez except for the Adams statement. As I've suggested, that's not a material aspect. And there's no finding of the critical finding that's necessary when you're going to charge someone because they testified untruthfully, that the court makes that finding that there was testimony that was untruthful. And he, the judge, never makes that finding. So I think that we should prevail on that issue. But the more important issues are obviously the instructional issues. I don't have anything to say. Well, if you're on plain error on that issue, it's not clear to me that you are going to prevail. If you didn't preserve that objection, it seems to me there's a problem. I think I've cited a case in the brief that says once the defendant objects to the application of the obstruction enhancement, the burden shifts to the prosecution to set forth the perjurious statements. And so I don't think under this context that I actually have that burden. As you explained to me, there are two discrete errors that you're alleging here. One is a legal error of articulation. The other is an error of adequacy of proof. Articulation implies that you would have objected after the articulation took place. And you did not object after the articulation took place, did you? Well, I think there's a real overlap, Your Honor. And I also think that if we were subject to plain error review, something that's never been raised by the government, we would prevail in light of the language in Massey and the language in Dunnegan and the extreme importance of not punishing someone merely for testifying because there are different elements that the court has to find and most critical of which, in this case, would have been that Mr. Gomez was willfully testifying falsely. And there's no finding of that fact. So if the court has no questions, thank you for your time. Thank you, counsel. Case is submitted. Thank you for your arguments.